This is an action for compensation in which the claims of plaintiff were met by exceptions of no right and no cause of action, which exceptions were sustained and plaintiff's suit dismissed by judgment of the District Court. From this judgment plaintiff has appealed.
The pertinent allegations of plaintiff's petition represent that plaintiff entered the employ of defendant on or about the 15th day of June, 1944; that his employment consisted of working in the caustic alkali liquid room, in which room he was required to test the said liquid and, in the course of which, he dipped the caustic from one vat and transferred it to another, in which operation the steam from the fluid blew into his face and over his body; that in handling the liquid his face, hands, arms and other exposed parts of his body were subjected to contact therewith; that during the latter part of April, 1946, plaintiff was affected by a rash on his body, hands, arms and face, which caused a severe itching with attendant discomfort, and which was accompanied by stomach pains; that the rash became a permanent source of irritation and infection; that he had never been troubled with any skin irritation prior to the time set forth; that on or about the 12th day of April, 1946, plaintiff learned for the first time that his condition was incurable and that he would suffer for the remainder of his life; and that, by reason of the alleged accident on April 12, 1946, plaintiff is entitled to compensation.
The grounds upon which defendant's exceptions are based are that plaintiff's petition does not set up the occurrence of an accident, nor does it allege any injuries as the result of an accident. Resolving these contentions into another form it is obvious that defendant resists plaintiff's demands on the ground that plaintiff is suffering from the effects of an occupational disease and not from injuries resulting from an "accident" within the meaning and under the intent and purpose of the Workmen's Compensation Statute. Act No. 20 of 1914, as amended.
Plaintiff's earnest counsel emphasizes the doctrine of liberal construction of the Workmen's Compensation Act and contends for the application of such a definition and interpretation of the term "accident" as would sustain plaintiff's action. In support of this argument counsel has particularly cited cases involving cement poisoning; cement and ivy poisoning; injury from working in dust; injuries from Caisson disease; heat prostration; injury from continuous climbing of telephone poles with the assistance of spurs; injury from glare, etc. We have carefully examined cases involving these points, among which we specifically note McClinton *Page 141 
v. Moore Bros., Inc., 19 La. App. 54, 139 So. 568; Woodward v. Kansas City Bridge Co., La. App., 3 So.2d 221; Glover v. Fidelity Casualty Co. et al., La. App., 10 So.2d 255; Haden v. Maryland Casualty Co. et al., La. App., 18 So.2d 238, together with numerous other authorities along the same line, and find that without exception all of these cases are readily and easily distinguishable, on the facts, from the instant case.
Diligent counsel for plaintiff particularly emphasizes the case of Cannella v. Gulf Refining Company, La. App., 154 So. 406, and what he denominates as the reaffirmance of the principles enunciated therein in Custer v. Higgins Industries, Inc., La. App., 24 So.2d 511. We eliminate the Higgins case from any consideration or discussion on the ground that it is in no sense analogous to and has no bearing upon the case at hand since it involved a hernia injury which was shown to have been sustained as the direct result of an established accident.
The Cannella case is worthy of particular notice only because the injury complained of resulted from the contraction of a disease, i. e., lead poisoning, which is somewhat comparable to the disease which is asserted by plaintiff herein. Notwithstanding this fact, we find no difficulty whatsoever in distinguishing the Cannella case and rejecting its holding as having any weight in the determination of the matter before us. The plaintiff in the Cannella case had been regularly employed for several years in the same character of work which he was doing on July 15, 1931, when the "accident" was established as having occurred. The Court found as a fact that the lead poisoning which Cannella sustained was acute and therefore it was an accidental injury which was compensable. Particular attention was called by the Court to the medical testimony to the effect that in cases of acute lead poisoning "the patient is normal and healthy and within a few hours or several days * * * the usual symptoms characteristic of lead poisoning evidence themselves and the patient is deathly sick and disabled" [154 So. 409].
The opinion in the Cannella case in itself is sufficient authority upon which to base a disposition of the case at bar by reason of the fact that it makes a careful analysis of the distinction between accidental injury and occupational disease, as defined by the well considered opinions of the courts of other jurisdictions, exhaustive citations and extracts therefrom being included in the opinion. In the course of the opinion the Court made the following pertinent observation:
"It appears to be well settled that where the lead poisoning is gradual and cumulative over a long period of time that it is not an accidental injury or disability within the meaning of the compensation statute."
Following the chronological sequence of the material facts set forth in plaintiff's petition, it is observed that plaintiff began work on or about the 15th day of June, 1944; that on August 15, 1945, after being subjected to contact with the caustic alkali liquid in the course of his employment for a period of more than a year, he suffered a reaction which manifested itself in a rash or eczema affecting his body and hands; that it was not until the 12th day of April, 1946, that plaintiff learned that his injuries were permanent.
Under the allegations of plaintiff's petition there is no ground for any conclusion save that plaintiff had been engaged for a period of well more than a year before any evidence of disease resulting from the nature of his employment began to manifest itself, and that he had been so engaged for a period of almost two years before the disease reached a stage of such severity as to cause disability. These facts meet every requirement that has been fixed by the Courts of Louisiana and the majority of other jurisdictions with respect to the definition of an occupational disease.
The facts in this case are more nearly comparable with the facts in the case of Mitchell v. Department of Highways et al., La. App., 27 So.2d 647, than any other which we have examined. In the cited case this Court denied recovery on the ground that the facts sustained a finding to the effect that the plaintiff was suffering from an occupational disease. In the course of the opinion reference was made to the clear definition of the term "occupational disease" *Page 142 
as set forth in Glover v. Fidelity Casualty Co., La. App.,10 So.2d 255.
To our minds the allegations of plaintiff's petition are amply sufficient in themselves to characterize plaintiff's disease as being occupational in character, by reason of the fact that it developed gradually over a long period of time. There is not the slightest indication in the petition of any acute development of disease which would permit the classification of the resulting injuries under the head of accidental, nor are there any allegations which would serve to provide a basis for a finding of the occurrence of an accident, even under the most liberal interpretation of the statute.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost.